UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. HOLLAND, ET AL., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No.: 4:08-cv-00707-HEA ) |
| CITY OF GERALD, MISSOURI, ET AL., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OF DEFENDANTS RYAN MCCRARY, SCOTT RAMSEY AND SHANNON KESTERMONT IN OPPOSITION TO PLAINTIFFS' THIRD MOTION FOR AN AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES AND OBJECTIONS TO PLAINTIFFS' SECOND BILL OF COSTS

COME NOW Defendants Ryan McCrary, Scott Ramsey and Shannon Kestermont, pursuant to Local Rules 54-8.02 and 54-8.03 and offer the following Memorandum in Opposition to Plaintiffs' Third Motion for Attorneys' Fees and Litigation Expenses and Objections to Plaintiffs' Second Bill of Costs.

In the present case, plaintiffs' counsel represented 29 separate plaintiffs for multiple independent claims in this matter. Each of the 29 plaintiffs brought claims alleging wrongful search, interrogation and/or arrest. Of the 29 plaintiffs, seven plaintiffs had their claims dismissed prior to or during trial. Of the remaining 22 plaintiffs, Defendant Shannon Kestermont received a judgment in her favor on all claims submitted against her at trial, a total of 24 claims. In addition, pursuant to the jury's verdict, judgment was entered in favor of defendants Ryan McCrary and Scott Ramsey and against 13 of the remaining 22 plaintiffs or a total of 52 claims. Only nine plaintiffs obtained a judgment on any of their claims against defendants Ryan McCrary and Scott Ramsey. In fact, of these nine plaintiffs, judgment was entered in favor of

defendants Ryan McCrary and Scott Ramsey on 16 of their claims. Furthermore, despite plaintiffs' counsel's requests for between $250,000 to $1,000,000 for each plaintiff, eight of the nine plaintiffs were awarded nominal damages of $1.00 each against defendants Ryan McCrary and Scott Ramsey and one plaintiff was awarded $300.00 against defendants Ryan McCrary and Scott Ramsey. These nine plaintiffs were awarded a combined total of $11,000 in punitive damages against defendant Ryan McCrary and $11,000 in punitive damages against defendant Scott Ramsey. Thus, the overwhelming majority of plaintiffs were unsuccessful in their claims against defendants Ryan McCrary and Scott Ramsey. Furthermore, even the nine plaintiffs that were awarded damages against defendants Ryan McCrary and Scott Ramsey none received damages close to the damages sought by them at trial. Finally, none of the plaintiffs were successful in any of their claims against defendant Shannon Kestermont.

### RESPONSE TO PLAINTIFFS' THIRD MOTION FOR AN AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES

Plaintiffs' previous motions for attorneys' fees sought fees that were claimed to have been incurred by all plaintiffs on all claims, including, claims dismissed prior to trial, claims dismissed during trial and claims which resulted in a verdict in favor of the defendants. (Doc. Nos. 269, 275, 279 and 299). This Court denied plaintiffs' previous motions for Attorney Fees and Litigation Expenses because plaintiffs failed to allocate the fees or designate that the fees requested were solely related to the plaintiffs that obtained a judgment in their favor. (*See* Order dated 7/19/2012, p. 2, Doc. 302). In their Third Amended Motion for Award of Attorney's Fees, the attorney for the plaintiffs represents to the court that he has, in response to the Court's Order (Doc. 302), reviewed the attorneys fee bills previously submitted in order to separate the time spent on the prevailing plaintiffs' claims as distinct from the time spent on claims of plaintiffs that were not successful. Remarkably, plaintiffs' third amended motion for attorney fees asserts

that 94% of the total attorneys' fees are related to the claims of the nine plaintiffs that received nominal damages.

In their third amended motion, plaintiffs' counsel claims that almost all of the attorney time, in fact, the overwhelming amount of attorney time, was allegedly spent on "all" the plaintiffs' claims. With very few exceptions, the only instances where attribution is made to a specific claim of an individual plaintiff occurs when that plaintiff is identified by name in the billing time entry, in other words, where the billing record clearly indicates the name of the plaintiff on whose behalf the time is allegedly spend. Otherwise, the time is deemed by the plaintiff's attorney to have been incurred on behalf of "all" plaintiffs. A typical example occurs in the entry of 8.5 hours for "Review Plaintiff's depositions and travel to/from Gerald Mo to interview and counsel plaintiffs in preparation for trial." The deposition of no specific plaintiff is mentioned, and the entry is silent whether all plaintiffs, or only some, were present for the meeting.

The problem with the plaintiffs' third amended motion is that the time records attached do not permit the reader to know what specific plaintiff was involved in the work claimed. The response is simply not in compliance with the Court's Order and the vagueness and lack of clarity of the entries has the effect of, and may be intended to, make it impossible to identify what time entry or portion of any entry was devoted to the claim of which Plaintiff, and whether that Plaintiff was allegedly a prevailing party or not. This lack of clarity should not be the basis for the award of attorneys' fees.

This Court's Order directs that the Plaintiffs and grants them leave to specifically detail the time spent with regard to each individual plaintiff. This has not been done.

A district court may, in its discretion, deny a request for attorney fees in its entirety when the request, submitted pursuant to § 1988, is so outrageously excessive it shocks the conscience of the court. *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92 (4th Cir. 1993). An excessive fee request has been held to constitute special circumstances justifying a denial of attorney fees to a prevailing party. In *Fair Housing,* the plaintiff sought attorney fees in excess of $500,000. The district court found the request excessive and awarded $20,000. The appellate court reversed finding that the request was excessive and that *no* attorney's fees should be awarded. Just as here, the appellate court also noted that the fee records failed to allocate the fees attributable to each claim (the plaintiff was not successful on all claims). Similarly, in *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980), the appellate court held that the district court has discretion to determine the quantum of fee to be awarded. The Court further explained that were the claim for attorney's fees is obviously inflated to an intolerable degree, the district court may refuse to award attorney fees to the prevailing plaintiff. *Id*.

Such is the case here. Plaintiffs seek an award of $561,103.50. In calculating that amount, plaintiffs' attorney asks the Court to compensate him at the rate of $450 per hour. This is, by any standard, a handsome and impressive hourly rate of pay. An attorney whose time is worth compensation at that rate deserves the highest possible regard for that attorney's skill, judgment, quality, competency, diligence and performance.

Yet, in the case at bar, the attorney who is now requesting compensation at this princely hourly rate of compensation only managed to prevail on the claims of 13 of the 21 plaintiffs whose claims were submitted to the jury. Of the 13, only 9 prevailed in their claims against these defendants, and none prevailed against defendant Kestermont. Of those nine, eight plaintiffs were awarded only $1 in actual damages. All nine plaintiffs were awarded punitive

damages, $2000 to Steve Holland and Betty Jo Jarvis and $1000 each to Heather Holland, Glenda Holland, Michael Orzech, Alex Borges, Jonathan Wright, Marie Wright and Thomas Wright.

Plaintiffs' attorney intentionally brought, prosecuted, took to trial and then simply abandoned during the trial the claims of three plaintiffs, including that of first named plaintiff, Michael Holland. No explanation for bringing then abandoning these claims has been offered. Plaintiffs' attorney brought a claim against but failed to make a submissible case of damages for the jury's consideration against one defendant, the City of Gerald, the claims against which were dismissed by the Court at the close of plaintiffs' evidence. Plaintiffs' attorney pursued a claim against one defendant, Shannon Kestermont, against whom not a single plaintiff prevailed. When an attorney insists the skill, judgment, experience and quality he brings to a case is of the highest possible quality, the Court must consider whether the representation with regard to all these failed claims is really worth $450 per hour.

It is, simply put, unreasonable for the Court to award the kind of judgment, skill, experience and quality of the legal representation that resulted in these failures at the rate of $450 per hour. Any attorney worthy of compensation at that rate would be expected to exercise judgment, experience, competency and skill of the highest possible quality. An attorney of such outstanding, excellent quality would be reasonably expected to know better than to pursue claims that had no merit whatsoever, pursue defendants against whom he is unable to present evidence sufficient to make a submissible case for damages, agreed to represent clients whose claims would simply be abandoned during trial, and sue a defendant against whom not a single submitted claim would succeed. This quality of representation is not worthy of compensation at $450 per hour.

In support of this hourly rate of compensation, the attorney for plaintiffs presents the Court with affidavits of attorneys M. Sabelman, V. Johnson, A. Rothert and S. Limbaugh, all of whom aver to their opinion that $450 is reasonable compensation. Defendants wish to point out that neither plaintiffs' attorney, nor any affiant, avers that plaintiffs' attorney is ever really paid at this rate by any client in the market place of attorneys' fees. Defendants seriously doubt whether plaintiffs' attorney is ever actually paid at a rate of $450 per hour for legal work performed, except in attorneys' fee requests in Federal Court.

One of eight plaintiffs who were awarded only nominal damages of $1.00 on his claims against defendants Ryan McCrary and Scott Ramsey, plaintiff Alex Borges, submits an affidavit in support of the award of attorneys' fees. In this affidavit, plaintiff Borges states that he "constantly" experienced racial prejudice in Gerald due to his mixed African American and Latin heritage. He also avers that on many occasions he was subject to "un-called for abuse, detention and racial epithets" by unidentified City of Gerald Police Officers due to his racial background, and that defendants McCrary and Ramsey had a "long history" of violating his constitutional and civil rights. (Third Motion for Attorneys' Fees Exhibit 2, ¶¶ 3, 4, 7, Doc. 306-2.)

Both in his pleadings in this case and in his testimony at trial, plaintiff Borges said nothing about any history of unlawful detentions, abuse or racial epithets towards him by any Gerald Police Officer. There was no testimony or evidence whatsoever that defendants McCrary or Ramsey knew of or had any prior contact with plaintiff Borges. Plaintiff Borges brought no claim against any defendant for racial discrimination or race based misconduct. In fact, the only evidence regarding any racially motived abusive language towards plaintiff Borges was the alleged comment when plaintiff Borges was first detained that was made by defendant Jakob to plaintiff Borges, to the effect of "get on the ground, N**ger", a statement that defendant Jakob

denied making.  Any such claim of long standing misconduct by any defendant towards plaintiff Borges as made in his affidavit is not only lacking any basis in the record and the evidence, it is belied by his own testimony of the complete absence of any behavior.

Further, plaintiff Borges avers that he was happy with the result of the trial.  The fact is that this case could have been settled for a sum that would have paid each and every plaintiff a far greater sum of money that any individual plaintiff recovered at trial.  The case did not settle because plaintiffs' attorney was not satisfied with anything less than the full amount of attorneys' fees, despite the fact that as a result of this choice, most plaintiffs received nothing and those plaintiffs who did recover damages received next to nothing.  Mr. Borges statement that "the case was not about the money" is not a feeling that is shared by his attorney.

Plaintiffs also ignore the impact of the nominal damage awards.  A plaintiff who receives nominal civil rights damages is not necessarily entitled to attorneys' fees.  *Marquart v. Lodge 837, Intern. Ass'n of Machinist and Aerospace Workers*, 26 F.3d 842, 850 (8th Cir. 1994).  Under section 1988, prevailing parties are entitled only to *reasonable* attorneys' fees.  A nominal damage award is a factor to consider in determining the reasonableness of the fee awards. *Marquart v. Lodge 837*, 26 F.3d at 850.  In such cases, a court may find that an award of low fees or no fees at all is appropriate.  As previously stated by the defendants, the Eighth Circuit has looked to Justice O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566 (1992) to help guide it in determining whether attorney fees are warranted.  *See Jones v. Lockhart*, 29 F.3d 422, 423-424 (8th Cir.1994).  Justice O'Connor offered a three part analysis to determine whether the plaintiff had won merely a technical victory in a civil rights case: 1) the difference between the damages sought and the amount recovered; 2) the significance of the

legal issue on which the plaintiff prevailed; and 3) any public goal or purpose the lawsuit may have served. *Farrar*, 506 U.S. at 121, 113 S.Ct. 566.

In this case, the difference between the damages sought and the amount recovered is considerable. The attorney for plaintiffs asked the jury to award hundreds of thousands of dollars to each plaintiff; the jury awarded $1 dollar actual damages to all but two of the successful plaintiffs, and awarded nothing to the rest. "[W]here recovery of private damages is the purpose of … civil rights litigation, a district court, fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986). In this case, the only damages sought by plaintiffs was the award of money. After three weeks of trial, in the verdicts against these defendants, the jury assessed actual damages at $1 each for eight of the nine plaintiffs who recovered any damages.

The second factor also supports the position that no attorney fees at all should be awarded. In the present case, there were no significant, unique, or novel legal issues presented. The public goal or purpose addressed by the third factor is also lacking. For example, this case did not involve claims for injunctive or declaratory relief to change an established policy or procedure for the public in general. *Cf. Lowry ex rel. Crow v. Watson Chapel School District*, 540 F.3d 752, 764-766 (8th Cir. 2008) (plaintiffs received injunctions preventing defendant school from counting protest activities against plaintiffs in the school's progressive discipline system and preventing discipline of students in the future for certain activities). Here, the plaintiffs sued for money; they did not seek any injunction or declaratory relief that would benefit others than themselves. Also, each of the defendant police officers were fired from their jobs in Gerald, and defendant Jakob went to Federal prison.

Despite the affidavit of plaintiff Borges, no plaintiff contended that defendants had a long standing or established policy that violated federally protected rights. Rather, this case involved the unique and unusual activities of one defendant, Bill Jakob, who represented himself as a federal officer. Defendants Ryan McCrary and Scott Ramsey each testified they were unaware that defendant Bill Jakob was in fact not a federal officer. The conduct and actions by defendants Scott Ramsey and Ryan McCrary was to provide genuine police support and assistance. Only defendant Jakob was an imposter, and he was investigated and prosecuted for representing himself as a federal officer. No other defendant was ever even charged with committing any crime. This suit was for the award of money only, and did not serve any public goal or purpose. Under the three-factor analysis in *Farrar*, attorney fees should not be awarded at all in this action.

As Justice O'Connor explains in her concurrence in *Farrar*, "When a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorneys' fees … As a matter of common sense and sound judicial administration, it would be wasteful indeed to require that courts laboriously and mechanically go through those steps when the *de minimis* nature of the victory makes the proper fee immediately obvious. Instead, it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to 'award low fees or no fees' at all." *Farrar*, 113 S.Ct. at 576.

Plaintiffs' third amended motion barely even acknowledges the fact that most of the claims submitted were unsuccessful. There were a total of 156 verdicts returned; of this total, 34 were for plaintiffs. All the others were for defendants. No plaintiff prevailed on the claims for unconstitutional interrogation, although plaintiff submitted 46 such claims. No fees are justified for any time spent pursuing such claims, and the fees requested includes time spent on these

claims. Frankly, considering all the unsuccessful plaintiffs, together with the plaintiffs who either voluntarily dismissed their claims or had their claims dismissed by the court, as well as claims of plaintiffs who were not prevailing parties, the fees submitted are extremely inflated and per se unreasonable. The use of block billing entries, the generic use of the term "clients" and the failure to describe in sufficient detail the nature of the activity make it impossible for either defendants or this Court to accurately allocate the time among the dismissed plaintiffs, the plaintiffs that had judgment entered against them, and the plaintiffs that received nominal damages.

In addition, the amount purportedly expended on attorneys' fees is simply not reasonable. As the Court in *Copeland v. Marshall*, 641 F.2d 880, (D.C. Cir. 1980) (*en banc*) explained, attorneys "should not be permitted to run up bills that are greatly disproportionate to the ultimate benefits that may reasonably be obtained." In the present case, generating attorney fees in the gross amount of $663,897.00 is greatly disproportionate to the benefits obtained. Furthermore, the relief requested in this case was purely monetary; no equitable relief was requested or obtained. Accordingly, the lack of success and inability of the plaintiffs to establish anything other than nominal damages illustrate the excessiveness of the attorney fees requested. The excessiveness of the attorney fee request constitutes special circumstances and a basis for denying an award of attorney fees.

Plaintiffs ignore these issues and contend that the attorney fees should be calculated based solely on a lodestar amount. However, in *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that if only partial or limited success is achieved, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount. The Court further noted that this is true

even where the plaintiff's claims were interrelated, not frivolous, and raised in good faith. *Id*. Congress has simply not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel try the case with devotion and skill. *Id*. Rather, as the Supreme Court held in *Farrar*, the most critical factor in determining a reasonable attorney fee is the degree of success obtained.

In the present case, the nominal awards indicate that attorney fees should not be awarded at all.  As discussed above, plaintiffs were unsuccessful on the overwhelming majority of the claims brought.  In addition, plaintiffs sought damages greatly exceeding those the jury awarded.  The awards of nominal damages establish that plaintiffs were unable to establish any genuine injury or actual damage as a result of defendants' actions.  Finally, the attorney fees requested would constitute an unreasonable windfall to the attorneys, a circumstance which courts have uniformly and consistently held is not the purpose of § 1988.  As the Supreme Court stated in *Farrar*, under such circumstances, the only reasonable fee to award is no attorney fees.

### ***OBJECTIONS TO PLAINTIFFS' AMENDED BILL OF COSTS***

Plaintiffs have submitted an amended Bill of Costs seeking $10,737.61 in costs.  In addition to the issues discussed above regarding lack of success and the failure to allocate the expenses, several of the expenses are not taxable as court costs.  Under the category of "Other costs," plaintiffs seek reimbursement for items not authorized by statute.  Under 28 U.S.C. § 1920, a judge or court clerk "may tax as costs" fees of the clerk and marshal, fees of the court reporter, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court-appointed experts and interpreters.  Section 1920 imposes "rigid controls on cost-shifting in federal courts," and "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal

courts are bound by the limitations set out in" section 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). In the Amended Bill of Costs, plaintiffs seek attorney travel and lodging expenses in the amount of $608.77. Such expenses are not recoverable as costs. *See Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217 (7th Cir.1975). Plaintiffs also seek reimbursement for costs associated with a mock jury panel in the amount of $500.00. Reimbursement of such an expense is not authorized by 28 U.S.C. § 1920. Plaintiffs also seek reimbursement in the amount of $1,467.50 for a private investigator for investigative services. Once again this is not a taxable costs under 28 U.S.C. § 1920. Plaintiffs also seek reimbursement of mediation fees in the amount of $268.75. The Eighth Circuit has held that it is an abuse of discretion to tax a mediator's fee. *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782-783 (8th Cir. 2002). The Eighth Circuit noted that § 1920 does not list mediation fees as taxable costs, and found no other statutory authority permitting the taxation of mediation fees in § 1983 litigation. *See Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001) (in Title VII case, district court abused its discretion in taxing losing party with costs of mediation because neither § 1920 nor Title VII listed such expenses as taxable). The Eighth Circuit further explained in *Brisco-Wade*, even "[a]ssuming the district court was following a local rule in taxing the mediator's fee against defendants, we conclude that the court lacked authority to do so given § 1920's exhaustive list of what costs may be assessed. *Id*. Plaintiffs also seek recovery of postage, parking expenses, expenses associated with transporting files to court and electronic research expenses in the amount of $417.38. In *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001), the Eighth Circuit affirmed the district court's denial of similar expenses finding that the plaintiffs were not entitled to reimbursement for expenses that are part of normal office overhead. Similarly, attorneys' traveling expenses

incurred in attending depositions, pretrial conferences, and trial, as well as expenses incurred in making investigations, are not recoverable as costs.  *See Wahl v. Carrier Mfg. Co.*, *supra.*

## *CONCLUSION*

Defendants respectfully suggest that the limited success and nominal awards dictate that attorney fees should not be awarded.  Plaintiffs' attorneys' requests are unreasonable and plaintiffs' failure to comply with this Court's order constitute special circumstances warranting an award of no attorney fees.  Similarly, the failure to allocate the expenses in the amended bill of cost justifies not awarding costs.  Even if costs are awarded, the amount claimed by plaintiffs includes items that are not authorized as costs under 28 U.S.C. § 1920.  These items, as discussed above, should not be awarded as costs.  Defendants respectfully suggest that a hearing on these issues is warranted to fully address the matters raised by plaintiffs' third motion for an award of attorney fees and litigation expenses and amended bill of costs.

Respectfully submitted,

/s/ Peter J. Dunne
Peter J. Dunne   # 31482MO
Peter M. Rohrich, III # 49197MO
PITZER SNODGRASS, P.C.
Attorneys for Defendants McCrary, Ramsey and Kestermont
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545 (Phone)
(314) 421-3144 (Fax)
dunne@pspclaw.com
rohrich@pspclaw.com

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 23rd day of August, 2012 to be served by operation of the Court's electronic filing system upon the following:  **Robert Herman**, Attorney for Plaintiffs, 621 North Skinker Boulevard, St. Louis, Missouri 63130; **Daniel J. Briegel** and **Benjamin Hotz**, Attorneys for

Plaintiffs, 102 E. Springfield, PO Box 522, Union, Missouri 63084; **William A. Hellmich.** Attorney for Defendants City of Gerald, Otis Schulte, Brad Landwehr, Rich Johnson, David Luechtefeld Dan Maxwell, and Derrick Lewis, 2000 South Hanley Road, St. Louis, Missouri, 63144; and **Mark H. Zoole and Renee J. Waters**, Attorneys for Defendant Bill A. Jakob, 1200 South Big Bend Boulevard, St. Louis, Missouri, 63117.

                    /s/ Peter J. Dunne