IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL J. HOLLAND, _et al._,          )
                                       )
                Plaintiffs,            )
                                       )
_vs._                                  )          Cause No. 4:08 CV 707-HEA
                                       )          **(Consolidated with**
CITY OF GERALD, MISSOURI, _et al.,_    )          **Cause No. 4:08 CV 713-CDP)**
                                       )
                Defendants.            )
_____   )

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO ATTORNEY FEES**

Plaintiffs exposed corruption at the highest ranks of the Gerald Police Department and the jury returned verdicts of compensatory and punitive damages in the aggregate of $41,924.  Defendants spent a total of 3363.7 hours in the defense of this case, for which they were paid approximately $367,450.00.  See Exhibits 1 and 2, discussed _infra_. Despite the fact that Defense counsel spent three times as much time as Plaintiffs' counsel, Defendants still argue that Plaintiffs' counsel should not receive any attorney fee. Defendants' argument is without merit.

"Despite its permissive language, the Supreme Court has interpreted § 1988 to entitle a prevailing civil-rights plaintiff to a fee award, absent 'special circumstances [that] would render such an award unjust.'" _Ladd v. Pickering,_ 783 F. Supp. 2d 1079, 1090 (E.D. Mo. 2011), citing _Hensley v. Eckerhart_, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  There are no special circumstances in this case that would render an award of attorneys' fees unjust.

## PLAINTIFFS' VERDICT IS NOT MERELY TECHNICAL OR *DE MINIMIS* WITHIN THE MEANING OF *FARRAR v. HOBBY*

*Farrar v. Hobby,* 506 U.S. 103, 115 (1992) ruled that nominal compensatory damages verdicts may be merely technical and pyrrhic, and may not support a reasonable attorney fee.  The three-part O'Connor test derived from *Farrar*[1] is used to judge whether a nominal compensatory damage verdict justifies a reasonable attorney fee or is merely technical or *de minimis*.  *Farrar* does not authorize courts to engage in a wide-ranging analysis of all judgments as to whether the plaintiff prevailed "enough" so as to merit an attorney fee. *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005).

> The district court characterized *Farrar* as a case authorizing an award of no attorney's fees, notwithstanding the fact that plaintiff prevailed, because the plaintiff did not prevail enough. *Farrar's* holding is much more limited. \*\*\* The jury's award of punitive damages alone is sufficient to take it out of the nominal category. Therefore, the district court's reliance on *Farrar* was improper.

Plaintiffs' verdict comprising compensatory and significant punitive damages is not nominal and the punitive damages alone take the case out of the ambit of *Farrar*.  See *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994), in which the Eighth Circuit held that plaintiff's verdict of $1.00 compensatory and $1.00 punitive damages for excessive force, "though minimally compensated, was not pyrrhic or technical;" *De Jesus Nazario v.*

---

[1] 1) The difference between the amount recovered and the damages sought; 2) the significance of the legal issue on which the plaintiff prevailed; and 3) any public goal or purpose the litigation might have served.

*Morris Rodriguez*, 554 F.3d 196 (1st Cir. 2009), holding that an  award of punitive damages unaccompanied by an award of actual or nominal damages did not constitute a "special circumstance" that served to render fee award unjust; *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 167-69 (2d Cir. 2011) (The damage award "was not a derisory or contemptuous rejection by the jury.  The district court conflated a small damages award with a *de minimis* victory."); *Est. of Borst v. O'Brien*, 979 F.2d 511, 516-17 (7th Cir. 1992):

> And although it was successful on only one claim and received only a negligible damage award, the jury did award the plaintiff punitive damages against one officer on the excessive force claim.  As the district court noted, this reflects "both the value of the victory in finding a violation of constitutional rights and the deterrence value" of the suit. *** A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations.

See also, *Schwenk v. Kavanaugh,* 94-CV-773, 1998 WL 259907 (N.D.N.Y. 1998) ("The punitive damage award alone, regardless of its size, is sufficient to indicate a degree of success necessary to support an award of attorney's fees."); *Edwards v. Rogowski,* 06 C 3110, 2009 WL 742871 (N.D. Ill. 2009) ("The jury's award of $29,500 is not trivial, and it does not warrant a significantly reduced fee, let alone an award of $0. First, the award primarily consists of punitive damages, which in and of itself demonstrates the plaintiffs' significant victory. ***The award of punitive damages, moreover, reflects the significance of those constitutional deprivations in the eyes of the

3

jury."); *Styers v. Pennsylvania*, 621 F. Supp. 2d 239, 242 (M.D. Pa. 2008) ("While the jury's damages award did not compensate Styers for out-of-pocket or emotional damages, the $20,000 punitive damages award underscores their conclusion regarding the nature of the retaliatory conduct and suggests that Styers' victory was more than "purely technical."); *Buss v. Quigg*, CIV.A. 01-CV-3908, 2002 WL 31262060 (E.D. Pa. 2002) aff'd, 91 Fed. Appx. 759 (3d Cir. 2004) (unpublished) ("The Supreme Court has specifically recognized the value of §1983 damage actions in deterring illegal entries of dwellings by police. *** Under these circumstances, to characterize Plaintiffs' success as "technical" or "*de minimis*" such that no attorney's fee could be reasonable would defy the very purpose of the governing statute.")

Plaintiffs' verdict of $1,924.00 compensatory and $40,000.00 in punitive damages is not merely technical or *de minimis* and does not constitute "special circumstances" justifying denial of attorney fees.

## ATTORNEY FEE CALCULATED BY LODESTAR METHOD IS NOT A WINDFALL TO THE ATTORNEY

"Under *Hensley v. Eckerhart*, supra, which announced certain guidelines for calculating a "reasonable" attorney's fee under § 1988, the "lodestar" figure, obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, is presumed to be the reasonable fee contemplated by § 1988," *City of Riverside v. Rivera,* 477 U.S. 561 (1986) and is not a windfall to the attorneys prosecuting the civil rights violations.

> Granting a windfall to plaintiffs was a concern echoed by Congress in
> enacting § 1988, but Congress balanced that concern against the need to
> attract competent counsel to prosecute civil rights cases. Thus, §1988 is a
> product of balancing those concerns by only permitting reasonable fees. To
> require Defendants to pay reasonable attorney's fees relevant to the
> prosecution of the successful claim does not create a windfall, but fulfills
> the Congressional purpose of § 1988(b).

*Thomas v. City of Tacoma*, 410 F.3d 644, 648-49 (9th Cir. 2005), citing *Riverside*.  The

lodestar calculation was implemented in order to prevent windfalls and does not create

them:

> We have firmly rejected the district court's authority to refuse a reasonable
> fee under the "special circumstances" exception simply because it believes
> it "would result in a windfall" to a plaintiff.  Granting a windfall to
> plaintiffs was a concern echoed by Congress in enacting § 1988, but
> Congress balanced that concern against the need to attract competent
> counsel to prosecute civil rights cases.

*Mendez v. County of San Bernardino,* 540 F.3d 1109, 1126-30 (9th Cir. 2008) (internal

citations and quotes removed).

> Congress made clear that it "intended that the amount of fees awarded
> under [§ 1988] be governed by the same standards which prevail in other
> types of equally complex Federal litigation, such as antitrust cases and *not*
> *be reduced because the rights involved may be nonpecuniary in nature.*
> Counsel for prevailing parties should be paid, as is traditional with
> attorneys compensated by a fee-paying client, for all time reasonably
> expended on a matter.  *** Thus, Congress recognized that reasonable

attorney's fees under § 1988 are not conditioned upon and need not be
proportionate to an award of money damages.

*City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) (Brennan concurring) (internal
quotes and citations removed) (emphasis in original).

There is a "strong presumption" that the lodestar figure is reasonable," *Perdue v.
Kenny A.* ex rel. Winn, 130 S. Ct. 1662, 1673 (2010), and is "presumed to be the
reasonable fee' to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens'
Council for Clean Air*, 478 U.S. 546, 564 (1986) supplemented, 483 U.S. 711 (1987);
*Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1067 (8th Cir. 1989); *Ladd v.
Pickering*, 783 F. Supp. 2d 1079, 1091 (E.D. Mo. 2011) (Lodestar "strong[ly]" presumed
to represent a reasonable fee.").  Defendants' argument that fees should be totally denied
simply because the size of the lodestar appears to be "excessive," or "shocks the
conscience," is not supported by the law or the evidence in this case.  See *Mendez*, *Id* at
1127 ("Those courts of appeals that have upheld a denial of fees under the "shocks the
conscience" test have done so only where the fee request appeared to have been made in
bad faith, such as billing outrageous numbers of hours on simple matters, or where the
plaintiff made no effort to eliminate hours spent on unsuccessful, unrelated claims").
Defendants have neither claimed nor presented any evidence that Plaintiffs' fee request
was made in bad faith or was grossly inflated.  Nor have Defendants identified any
grossly excessive and unnecessary time in Plaintiffs' detailed time records.  Given that
Defendants spent at least three times the number of hours litigating this case as did
Plaintiffs, it is hard to imagine on what grounds Defendants could make such a claim.

6

Plaintiffs' submission of attorney fees is based upon the lodestar product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, neither of which has been challenged by evidence submitted or cited by Defendants. Plaintiffs' lodestar calculation is not a windfall to counsel.

## PLAINTIFFS CALCULATED THE LODESTAR IN ACCORDANCE WITH *HENSLEY*

*Reasonableness of the Number of Hours Spent by Plaintiffs' Counsel*

Without pointing to any specific task or citation to the record, Defendants challenge the reasonableness of the number of hours Plaintiffs' counsel spent prosecuting this case.  This is surprising, since Defense counsel spent more than three times the number of hours in the defense of this case as did Plaintiffs' counsel.  The two counsels for Ramsey spent a total of 2,188 hours, see Exhibit 1, attached hereto, while Jakob's counsel, who did not even enter into representation until the second year after the filing of the case, spent 1,175.7 hours.  See Exhibit 2, attached hereto.

The discovery period in this case extended to nearly 3 1/2 years, with two separate trial settings, due to a transfer of judges.  Defendants McCrary and Ramsey maintained their ignorance of the conspiracy throughout the entire case, and continue to claim innocence despite the jury's verdict.  Defendant Jakob continues to claim that he was "just doing good solid police work" notwithstanding his lack of training or licensure. Given the intransigence of Defendants' defense, the number of witnesses involved, and the widespread reach of Defendants' conspiracy, extensive investigation, discovery, and review of large numbers of documents were necessary. Three weeks of trial were

necessary to present all the evidence and issues to the jury.  However, only 2.5 trial days were necessary to present the testimony of all the Plaintiffs.  The scope of the case and the length of time necessary to bring the case to the jury were dictated and necessitated by the widespread scope of Defendants' conspiracy, not through any featherbedding on the part of Plaintiffs.

> In at least one important respect it does not lie in the mouth of defendants to cavil at the enormous expenditure of time reflected in the request: In large part the scope of that expenditure was forced by the intransigence of defendants themselves, who fought tooth and nail every step of the way. … Defendants cannot be heard to argue that time plaintiffs were forced to spend in responding to their litigation tactics is not compensable.

*Williams v. Lane*, 1989 WL 111841 (N.D. Ill. 1989).  Defendants have argued in hearing that attorney fees should be denied because this case was an easy case for Plaintiffs to win.  However, in *King v. Turner*, CIV 05-388 (JRT/FLN), 2007 WL 1219308 (D. Minn. 2007), the same argument was rejected out of hand:

> Defendant argues that there was nothing unusual or complex about plaintiff's case that would justify the rates requested by plaintiff.  However, the Court has observed that police misconduct cases are very difficult for plaintiffs to win and require significant trial skill and expertise of lawyers.  Indeed, the Supreme Court has compared the complexity of civil rights litigation to antitrust litigation. *Hensley*, 461 U.S. at 430 n. 4.

Defendants' argument that Plaintiffs' counsel should be penalized for failure to predict the outcome of the various claims raised by Plaintiffs has similarly been rejected.

> Litigation is unpredictable and the mere fact that the jury ruled against
> [plaintiff] on one of her claims does not mean that her attorneys failed
> her—especially in light of the fact that [plaintiff] received awards for both
> compensatory and punitive damages.  The Court agrees with [plaintiff] that
> the fact that the jury determined that punitive damages were proven,
> especially given the greater burden of proof, is remarkable and reflects a
> significant accomplishment in this trial. Moreover, both of [plaintiff's]
> attorneys clearly were well prepared for trial and experienced in this type of
> litigation.  The Court has no doubt that the expertise of both lawyers played
> a substantial role in Plaintiff's receipt of a jury verdict and punitive
> damages on her retaliation claim.

*Lewis v. Heartland Inns of Am., L.L.C.*, 764 F. Supp. 2d 1037, 1045 (S.D. Iowa 2011)
(internal citations and quotes removed).

Defendants' assertion that the extended litigation was somehow unnecessary because the case should have been settled is without merit because Defendants did not avail themselves of the opportunity provided by Rule 68 for offer of judgment. Defendants should not be heard to complain about costs and fees continuing to run when they submitted the case to the jury without making the offer of judgment to Plaintiffs in accordance with the procedures set forth in Rule 68.  Defendants had the opportunity to "stop the clock" but failed to do so.  Furthermore, Plaintiffs properly rejected the very late discussion of settlement, in which Defendants demanded confidentiality and the right to continued denial of wrongdoing, which would have undermined the purpose of § 1983.

Defendants also make a passing, non-specific objection to the supposed lack of detail in Plaintiffs' billing records, but this court has previously rejected such an argument:

> While the entries do not specifically detail each and every minute of time spent on a particular task, the description sets forth the matter that was addressed by the attorneys and the amount of time spent for the listed items. Defendant's position that counsel should be required to more specifically detail how his/her time was expended would place a tremendous burden on any counsel and would result in inefficient utilization of counsel's time. This objection is overruled.

*Monsanto Co. v. David,* 4:04CV425HEA, 2006 WL 2669076 (E.D. Mo. 2006 Autrey).

Since Defense counsel spent a total of 3,363.7 hours in the defense of this case, Defendants' claim that Plaintiffs' counsel expenditure of 1107.2 hours is excessive is without merit.

*Reasonableness of the Hourly Rate*

The "burden is on the fee applicant to produce satisfactory evidence *** that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate." *Blum v. Stenson,* 465 U.S. 886, 896 (1984).  "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth a good reason why a lower rate is essential." *Pickett v. Sheridan Health Care Ctr.,* 664

F.3d 632, 640 (7th Cir. 2011) (internal quotations removed).  See also, *Spegon v.*

*Catholic Bishop of Chi.,* 175 F.3d 544, 554–55 (7th Cir.1999) ("[H]owever,  once the

attorney provides evidence establishing his market rate, the burden shifts to the defendant

to demonstrate why a lower rate should be awarded.")

> [I]t is not enough merely to contest the claimed hourly rate; rather,
> appellees must submit *evidence* of a different reasonable hourly rate.  They
> have not done so here.  Instead, they state conclusorily that the requested
> rates are "excessive" and cite two District Court cases from 1998 (four
> years prior to our decision in this case) awarding lower fees to different
> attorneys in different cases.

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed. Appx. 93, 101 (3d Cir. 2006)

(unpublished).  Nor is it enough, however, for a court to simply "eyeball a fee request and

cut it down by an arbitrary percentage." *Browder v. City of Moab,* 427 F.3d 717, 723

(10th Cir.2005).

The reasonable hourly rate is calculated according to the prevailing market rate.

See *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 286 (1989) ("A reasonable attorney's fee

under § 1988 is one calculated on the basis of rates and practices prevailing in the

relevant market, *i.e.,* in line with those rates prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation," (internal

citations removed); *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 995-96 (8th Cir.

2012) ("A reasonable hourly rate generally means the ordinary fee for similar work in the

community."); *McDonald v. City of Florissant*, 4:10CV986 CDP, 2011 WL 1576766

(E.D. Mo. 2011 Perry) ("As to the hourly rate, attorney's fees awarded under 42 U.S.C. §

1988 "are to be based on market rates for the services rendered," *Missouri v. Jenkins,* 491

U.S. 274, 283 (1989)").  The preferred mode of evidence as to reasonable market rate is

third party affidavits attesting to the billing rates of comparable attorneys.  *Pickett v.*

*Sheridan Health Care Ctr.,* 664 F.3d 632, 640 (7th Cir. 2011).  Plaintiffs submitted

evidence from four local and respected attorneys averring that $450.00 is the hourly

market rate prevalent in the St Louis Metropolitan area for plaintiff's civil rights

attorneys with the qualifications, experience, and reputation as Plaintiffs' counsel.

Plaintiffs have previously cited a number of recent decisions from this judicial

district in which St Louis attorneys were awarded attorney fees pursuant to Sections 1988

and similar fee shifting provisions, at the rate of $400.00 or more per hour.  Defendants

have inexplicably ignored these recent attorney fee awards.  "[E]vidence of fee awards

from prior similar cases is relevant to a district court's determination of a reasonable

hourly rate and cannot be ignored out-of-hand." *Spegon v. Catholic Bishop of Chicago*,

175 F.3d 544, 557 (7th Cir. 1999).  See, *W. v. Matthews Intern. Corp.*, 4:09 CV 1867

DDN, 2011 WL 3904100 (E.D. Mo. 2011) in which Judge Noce summarized recent fee

awards in the Eastern District of Missouri:

> Over the last four years, this court has found hourly rates ranging from
> $195 to $450 reasonable in similar cases. *See Marez v. Saint–Gobain*
> *Containers, Inc.,* No. 4:09 CV 999 MLM, 2011 WL 1930706, at *12
> (E.D.Mo. May 18, 2011) (hourly rate of $350 not questioned by defendant;
> supporting factors were that counsel was a sole practitioner and the rate
> requested was a contingent fee); *Betton v. St. Louis Cnty.,* No. 4:05 CV
> 1455 JCH, 2010 WL 2025333, at *4 (E.D.Mo. May 19, 2010) (hourly rates

12

of $195, $260, $400, and $450; the latter two rates being supported by affidavits of local attorneys); *Murphy v. Fedex Nat'l LTL, Inc.,* No. 4:07 CV 1247 JCH, 2009 WL 1939957, at *3 (E.D.Mo. July 2, 2009) (hourly rate of $400; contrary argument that EEOC experience was irrelevant was rejected);*** In 2009, the Missouri Court of Appeals affirmed an hourly rate of $400 for experienced counsel, including attorney Mary Ann Sedey, in a case brought under the MHRA. *Alhalabi v. Mo. Dep't of Nat. Res.,* 300 S.W.3d 518, 531 (Mo.Ct.App.2009).

See also, *Betton v. St. Louis County,* Case No. 4:05–CV 01455 (2010 Hamilton) (specifically holding that $450.00 per hour for Eric Sowers was a reasonable market rate in the St. Louis area for civil rights litigators with 30+ years of experience); *Rohrbough v. Hall*, Case No. 4:07 CV 00996 (2010 Weber) ($400/hour for Stephen Ryals); *Griffin & Low v. City of Kansas City Missouri*, 0916–CV27999 (2011 Jackson County)($450/hour rate for Mark Jess); *Murphy vs. Federal Express*, 4:07-CV-01247 (2009 Hamilton) ($400/hour for Mary Ann Sedey); *Thomas v. A.G. Electrical,* Case No. 2107-CC3448-01 (2011 Siwack, St. Louis County) ($400/hour rate; fee awards to counsel with 20+ years' experience).

Defendants' highly discounted billing rates, see Exhibits 1 & 2, are not an acceptable limitation on the reasonable market rate for plaintiff's attorneys in a civil rights case. See*, W. v. Matthews Intern. Corp.,* 4:09 CV 1867 DDN, 2011 WL 3904100 (E.D. Mo. 2011) ("The court concludes that plaintiff's counsel should not be limited to their hourly rates charged in cases cited by defendant. The economic factors that drive attorney and law firm billing rates in cases where regular clients have contracted to pay

for services rendered differ from those where unique clients' ability to pay for services rendered is affected by the outcome of the litigation and where the attorney's fee is to be paid by a non-consenting opposing party.")

Defendants' contention that it is doubtful "whether Plaintiffs' attorney is ever actually paid at a rate of $450 per hour for legal work performed except in attorneys' fees requests in Federal Court," is wholly irrelevant.  In fact, the Eighth Circuit in *Little Rock Sch. Dist.* , citing *Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), expressly ruled that attorneys should be compensated at the local market rate despite the fact that they may have been paid at a lower contractual rate. ("§ 1988 contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount.")

During the hearing on attorney fees, the Court raised the issue of whether the Plaintiffs would object to an attorney fee that is in excess of the total amount of damages awarded by the jury.  Plaintiffs previously attached the affidavit of Alex Borges for the purpose of demonstrating that the individual plaintiffs were satisfied with the outcome of the trial and did not object to the proposed attorney fee.  Plaintiffs now supplement Borges' affidavit with the affidavits of prevailing plaintiffs Marie Wright, Exhibit 3, Thomas Wright, Exhibit 4, and Jonathan Wright, Exhibit 5, in further support.

## APPLICATION OF THE O'CONNOR THREE FACTOR TEST FOR ATTORNEY FEES ADOPTED BY THE EIGHTH CIRCUIT IN *JONES V. LOCKHARDT* SUPPORTS THE AWARD OF ATTORNEY FEES

Even if Justice O'Connor's three factor test from *Farrar* is applied to the instant case, Plaintiffs would still be entitled to an attorney fee.  Defendants conspicuously fail to acknowledge that the Eighth Circuit application of the O'Connor test in *Jones v. Lockhart*, 29 F.3d 422, 423-24 (8th Cir. 1994) resulted in an award of attorney fees despite the nominal compensatory and punitive award totaling $2.00.

*O'Connor Factor 1: Insignificant Discrepancy*

Addressing the first O'Connor factor, the *Jones* court found that the discrepancy between the amount sought and the amount awarded was insignificant and not a basis for denying attorney fees.  "[A]lthough there is a discrepancy between the amount of damages sought and the amount recovered ($860,000 sought, $2 recovered), it pales in comparison to the discrepancy presented in *Farrar* ($17,000,000 sought, $1 recovered)." *Jones,* at 424.  "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986) ( internal citations removed).

Since Plaintiffs were awarded significant punitive damages in addition to the modest compensatory claim, Defendants' discrepancy argument is without merit.

*O'Connor Factor 2: Vindication of Important Constitutional Right*

Addressing the second O'Connor factor, the *Jones* court held "vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in *Farrar.*" *Jones*, 29 F.3d at 424. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986). See also, *Murray v. City of Onawa, Iowa*, 323 F.3d 616, 619 (8th Cir. 2003), awarding attorney fees wherein $500,000 in damages were sought, but only $1.00 awarded, because the case presented significant legal issues, and clear public policy was served by case.

The jury's assessment of compensatory and punitive damages in the aggregate of $41,924.00, vindicates Plaintiffs' significant Constitutional interest in freedom from unreasonable arrest and unreasonable search, and justifies the award of attorney fees under the second O'Connor factor.

*O'Connor Factor 3: Verdict Serves Public Purpose*

Finally, *Jones* addressed the third O'Connor factor, rejecting Defendants' argument that Plaintiffs' victory was without public goal or purpose:

> Civil rights litigation serves an important public purpose; "[a] plaintiff bringing a civil rights action 'does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority.' " *Casey,* 12 F.3d at 805 (quoting *Newman v. Piggie*

16

> *Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263
> (1968)).

*Jones, Id.* at 424.  In a case "that involves "individual police misconduct," a "deterrent

effect is particularly evident [because] ... injunctive relief generally is unavailable." *City*

*of Riverside v. Rivera*, 477 U.S. 561, 575 (1986), 106 S.Ct. at 2694.  "Congress expressly

recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for

himself alone but also as a 'private attorney general,' vindicating a policy that Congress

considered of the highest importance." *Riverside,* 477 U.S. at 575, 106 S.Ct. at 2694

(citation omitted) (internal quotation marks omitted).  As the Supreme Court has

explained, "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate

important civil and constitutional rights that cannot be valued solely in monetary terms."

*Id.* at 574, 106 S.Ct. at 2694.  Therefore, "Congress has determined that the public as a

whole has an interest in the vindication of the rights conferred by [§ 1983], over and

above the value of a civil rights remedy to a particular plaintiff." *Id.* (internal quotation

marks omitted).  See also, *Hyde v. Small,* 123 F.3d 583, 585 (7th Cir.1997) (Posner, J.).

> The district court based its decision to award no fees on the small size of
> the verdict and the fact that the case broke no new ground in the law of
> police abuses.  If these are sufficient grounds, it means that routine police
> misconduct, which although unconstitutional, is neither harmful enough to
> support a large award of compensatory damages nor malicious enough to
> justify an award of punitive damages, is, as a practical matter, beyond the
> reach of the law.  It is impossible, unless there is an expectation of a fee
> award (and often not then), to interest a competent lawyer in bringing a suit
> in federal court to recover a small amount of damages unless the plaintiff is

17

> a rich person willing to finance the suit out of his own pocket rather than by
> means of a contingent-fee contract, the normal way in which tort suits are
> financed in this country.  Yet the cumulative effect of petty violations of the
> Constitution arising out of the interactions between the police (and other
> public officers) and the citizenry on the values protected by the
> Constitution may not be petty, and if this is right, then the mere fact that a
> suit does not result in a large award of damages or the breaking of new
> constitutional ground is not a good ground for refusing to award any
> attorneys' fees.

See also, *Koopman v. Water Dist. No. 1 of Johnson County, Kan.*, 41 F.3d 1417, 1421

(10th Cir. 1994), distinguishing *Farrar*:

> It does not appear to us this is the kind of case *Farrar* was intended to
> discourage attorneys from taking.  It is true that Koopman was not
> successful in proving that he was damaged, but we do not believe that he
> and his attorney should bear the entire cost of battling the District's
> unconstitutional practices.  Deterring meritorious lawsuits on constitutional
> issues because they offer a small likelihood of a significant money
> judgment presents as grave a danger to our legal system as frivolous
> litigation.

The jury rejected Ramsey and McCrary's claims that they were unwitting and

unwilling dupes of Defendant Jakob.  The necessity of bringing this case to conclusion is

merely underscored by Defendants' continuing assertions of innocence, continuing

throughout the filing of their post-trial motions, despite the implicit jury findings that

exposed them as liars.  The punitive damage award against Defendants Jakob, McCrary,

and Ramsey reflects "both the value of the victory in finding a violation of constitutional

rights and the deterrence value" of the suit. *Est. of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir. 1992).  "A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations." *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988).  The imposition of punitive damages against Defendants demonstrates the public purpose served by this case.

> The more important the right at stake and the more egregious the violation, the more likely it is that the victory serves a public purpose.  An award of punitive damages, therefore, is strong evidence that the victory served a public purpose.

*Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993).

## FURTHER ADJUSTMENTS TO THE LOADSTAR ARE NOT WARRANTED

*Claim Counting Rejected By the Supreme Court*

The bulk of Defendants' Memorandum in Opposition to Attorney Fees is an express appeal to "claim counting;" the argument that attorney fees should be reduced or denied based on comparing the total number of claims made versus the number of successful claims.  This is a practice expressly forbidden by the Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424, 455 (1983) ("We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. *** Such a ratio provides little aid in determining

what is a reasonable fee in light of all the relevant factors."); *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010), similarly rejecting "claim counting." ("*Hensley* explicitly counseled against applying such "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon."). Fee awards "should not be linked mechanically to a plaintiff's award." *Schlacher v. L. Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 857 (7th Cir. 2009).

*Time Billed for Non-Prevailing Plaintiffs has already been Redacted by Plaintiffs Pursuant to the Previous Court Order*

At the direction of the Court, Plaintiffs identified all time applicable to prevailing Plaintiffs, and redacted all time which was wholly related to non-prevailing plaintiffs. This resulted in a reduction of 72.5 hours of attorney time, and 162.2 hours of paralegal / law clerk time. Defendants' complaint that the reduction in attorney time was only five percent is meaningless since the billing records reflect that most of the time spent on individual plaintiff's claims was spent by the paralegals and clerks, who incurred an 18% reduction in billed time.

Defendants have failed to identify any time billed that is wholly unrelated or not intertwined with the claims of the prevailing Plaintiffs. Many of the time entries are obviously applicable to all prevailing plaintiffs on their face, e.g., 4/15/09 RH: "Preparation for and attendance at deposition of C. Angel at King, Krehbiel," total time 3.0 hours. Defendants challenge only one time entry for travel to Gerald to interview witnesses in preparation for trial, which Plaintiffs properly designated as applicable to all.

All witnesses, whether or not they happened to be prevailing Plaintiffs, were integral to the ultimate successful verdict.  Given the interconnectedness of all claims, parties, and witnesses, in addition to the rapidly approaching trial, it was necessary for the benefit of all of the prevailing Plaintiffs for counsel to interview all of them, as well as the non-prevailing plaintiffs, as well as many non-parties, in order to properly prepare for trial.  Defendants ignore the many redactions during the discovery period in which time applicable to all plaintiffs was allocated among prevailing and non-prevailing plaintiffs.  See, e.g., 3/18/09 SKB: "Review Interrogatories and Requests for Admission Directed to Plaintiffs (x28); draft correspondence to clients forwarding same for Answers / Responses."  Total time 2.5 hours: 1.3 prevailing plaintiffs; 1.2 non-prevailing.

The lodestar is the presumptively reasonable fee award and Defendants have failed to meet their burden to prove why the lodestar should be reduced. *Joe Hand Promotions, Inc. v. That Place, LLC*, 11-CV-931, 2012 WL 2525653 (E.D. Wis. 2012).

*Prevailing and Non-Prevailing Plaintiffs and Claims Are All Related and Intertwined Because They All Arise from the Same Common Core of Facts and Legal Principles*

Defendants McCreary and Ramsey were small-town bullies who used their official police positions to intentionally and knowingly conspire with Defendant Jakob to violate the constitutional rights of the citizens of Gerald at large.  Plaintiffs' investigation and evidence at trial established the nature of the conspiracy and that McCrary and Ramsey were not the unwitting dupes of Jakob, but were the instigators and facilitators of the constitutional violations.  The investigation, evidence and legal research necessary to establish the constitutional violations were of necessity intertwined and were based on the

same "common core of facts" and "legal principles."  "Much of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Multiple Plaintiffs brought suit to establish that over a short period of time, Defendants had hijacked the police department and subverted Plaintiffs' Constitutional protections.  The jury punished Defendants for their actions.  The fact that the jury found in favor of only 13 of the 21 Plaintiffs who submitted claims does not ameliorate nor detract from the egregious Constitutional violations committed by Defendants. Defendants acted in concert and in the same manner against all Plaintiffs.  Their claims are intertwined.  Defendants' broad suggestion that attorney fees should be denied or reduced because not all claims against all defendants were successful has been rejected by many courts on many occasions, most notably *City of Riverside v. Rivera*, 477 U.S. 561, 584 (1986), in which:

> suit was instituted against the city, its Chief of Police, and 30 police
> officers, respondents prevailed only against the city and 5 of the officers.  It
> is true that under *Hensley* fees should not be awarded for hours spent on
> claims as to which the plaintiffs were unsuccessful.  *Hensley* also teaches,
> however, that where a "lawsuit consists of related claims, a plaintiff who
> has won substantial relief should not have his attorney's fee reduced simply
> because the district court did not adopt each contention raised." 461 U.S., at
> 440, 103 S.Ct., at 1943.

When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were "distinct in all respects from his successful claims." *Hensley,* at 440, 103 S.Ct. 1933.  "Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.' " (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933)). *Lash v. Hollis*, 525 F.3d 636, 642 (8th Cir. 2008).  The "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *Hensley*, 461 U.S. at 435.  "As the Supreme Court observed in *Hensley,* '[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.'" *Emery v. Hunt*, 272 F.3d 1042, 1046-49 (8th Cir. 2001).  "Claims are related, and hence deserving of compensation, if they 'involve a common core of facts' or are 'based on related legal theories.' "*Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) (quoting *Hensley,* 461 U.S. at 435). *** If claims are related, the "lawsuit cannot be viewed as a series of discrete claims." *Heaton v. Weitz Co., Inc.*, 05-CV-102-LRR, 2007 WL 2301251 (N.D. Iowa 2007) *aff'd sub nom. Heaton v. The Weitz Co., Inc.,* 534 F.3d 882 (8th Cir. 2008).

Despite ample opportunities to do so, Defendants have not identified any time billed that was not interrelated to the case as a whole.  "Indeed, is difficult to see how the evidence [plaintiff] presented—or her attorneys' trial preparation more generally—would have differed in any meaningful way" if the unsuccessful claims and non-prevailing parties were omitted.  *Lewis v. Heartland Inns of Am., L.L.C.,* 764 F. Supp. 2d 1037,

23

1046 (S.D. Iowa 2011).  Defendants' contention that Plaintiffs should be denied attorney fees solely because some of the time was spent on matters or claims related to non-prevailing plaintiffs has been rejected by the Eighth Circuit and the Supreme Court.  See *Casey v. City of Cabool, Mo.,* 12 F.3d 799, 806 (8th Cir. 1993) (emphasis added).

> The City contends that some of the time compensated was spent in pursuit of theories and on issues upon which Casey did not prevail.  This argument ignores the precedents on this issue and their rationale.  Once a party is found to have prevailed, "[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit." *Hendrickson,* 934 F.2d at 164.  In *Hendrickson,* this court found that a fee awarded under § 1988 properly compensated plaintiff's attorney for time spent on interrelated issues and theories upon which the plaintiff did not prevail. *Id.*  We reasoned that counsel's time is devoted to the case as a whole, rather than to specific theories.  The dispositive consideration, therefore, is whether the issues on which plaintiff's counsel spent time are interrelated to the central issues of the case.  The Defendants, however, point to five issues upon which the plaintiff did not prevail, without addressing whether these or other issues might be unrelated to the central issues of the case.  **Since Defendants did not raise the issue of interrelatedness below, and do not raise it here, we are precluded from addressing that question.**

It is Defendants' burden to demonstrate how the time billed by Plaintiffs is unrelated and should be excluded, and since they have failed to do so, they have waived this issue.

## COSTS RECOVERABLE UNDER § 1983

Defendants object to reimbursement of costs of litigation under 28 U.S.C. §1920, without considering that §1988 provides for reimbursement of the litigation costs to which they object.  Defendants do not argue that the expenses are not recoverable under any theory of recovery; they merely argue that the expenses are not recoverable under § 1920.  The "authority to award such expenses does not come from §1920; rather, it comes from §1988." *See, e.g., Jenkins v. Kan. City Mo. Sch. Dist.,* 525 F.3d 682, 682 n. 1 (8th Cir.2008) ("travel expenses and other out-of-pocket expenses that a law firm normally would bill to its client are more properly characterized as part of an attorney fee award" under § 1988 than costs under §1920); *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–95 (8th Cir.1996)." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1096-97 (E.D. Mo. 2011); mock jury expenses are recoverable under §1988, *Lewis v. Heartland Inns of Am., L.L.C.*, 764 F. Supp. 2d 1037, 1049 (S.D. Iowa 2011) ("the focus group-related expenditures contributed to the litigation, benefitted [plaintiffs' case] and are compensable as reasonable out-of-pocket expenses incurred by [plaintiff's attorneys]"); and investigative costs, *Law. v. 84 Lumber Co.*, 96 C 0356, 1998 WL 111703 (N.D. Ill. 1998) ("Costs of an investigator may be properly awarded as an attorney fee"),  and travel expenses.")

Plaintiffs' motion specifically cites §1988 as the basis for reimbursement of litigation expenses and Defendants' objections are without merit.

Respectfully submitted,

**SCHWARTZ, HERMAN & DAVIDSON**

By:   /s/  Robert Herman
      Robert Herman, #32376MO
      8820 Ladue Road
      Suite 201
      St. Louis, Missouri 63124
      Ph:  (314) 862-0200
      Fx:  (314) 862-3050
      bherman@laduelaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on 9/24/12, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following counsel of record:

William A. Hellmich, Esq.
King, Krehbiel, & Hellmich, LLC
2000 South Hanley Road
St. Louis, Missouri 63144
Ph:  (314) 646-1110
Fx:  (314) 646-1122
bhellmich@kkhhb.com
*Attorneys for Defendants, City of Gerald, MO; Otis Schulte; Brad Landwehr, Rich Johnson; David Luechtefeld; Dan Maxwell; and Derrick Lewis; and Defendants , Ryan McCrary, Scott Ramsey and Shannon Kestermont, in their official capacities*

Peter J. Dunne, Esq.
Peter Rohrich, Esq.
Pitzer Snodgrass, P.C.
100 South Fourth Street
Suite 400
St. Louis, Missouri 63102-1821
Ph:  (314) 421-5545
Fx:  (314) 421-3144
dunne@pspclaw.com
rohrich@pspclaw.com
*Attorneys for Defendants, Ryan McCrary, Scott Ramsey and Shannon Kestermont*

Renee Waters, Esq.
P.O. Box 190549
St. Louis, Missouri 63119
Ph:  (314) 647-1200
zoole@sbcglobal.net
renee_waters@me.com
*Attorney for Defendant Bill A. Jakob*


By: /s/ Robert Herman